UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KANAL V. GASTON,

         Plaintiff,

    v.                                                                                  3:12-cv-0063-ST

FACEBOOK, INC.; MARIA RAQUEL                              FINDINGS AND
RIVAS; LEXIS-NEXIS GROUP and/or REED           RECOMMENDATIONS
ELSEVIER, INC.; CAPITOL
INFORMATION GROUP, INC. and/or
BUSINESS MANAGEMENT DAILY;
GOOGLE, INC.; TEXAS OFFICE OF THE
ATTORNEY GENERAL and/or THE STATE
OF TEXAS; and THE PNC FINANCIAL
SERVICES GROUP, INC.,

         Defendants.

STEWART, Magistrate Judge:

       Plaintiff, Kanal V. Gaston ("Gaston"), has applied to proceed *in forma pauperis* (docket

#1).  Because Gaston indicates that he is not employed and has no income or assets, his

application should be granted.  However, for the reasons set forth below, the Complaint should

be dismissed with prejudice as to some defendants and as to the remaining defendants, Gaston

should be permitted to file an amended complaint or refile in a district where venue is proper.

1 - FINDINGS AND RECOMMENDATIONS

## <u>ALLEGATIONS</u>

This is the second action filed by Gaston in this Court within a week.  The first action, *Gaston v. Harris County,* Case No. 3:12-cv-23-PK, names approximately fifty (50) defendants and alleges eight claims involving numerous causes of action, including defamation, employment "sabotage," false imprisonment, "coercion," "bribery," "attempted murder," "censorship," "burglary," "theft," "invasion of privacy," and violations of the United States Constitution.  On January 23, 2012, Magistrate Judge Papak recommended dismissal of that action without prejudice and allowing Gaston to file an amended complaint alleging a proper basis for venue in this district or refile in a district where venue is proper.  Findings and Recommendation (docket #6).

In this action, Gaston names seven of the same defendants as in the first action, namely: Facebook, Inc. ("Facebook"), Maria Raquel Rivas ("Rivas"),  Lexis-Nexis Group and/or Reed Elsevier, Inc. ("Lexis-Nexis"), Capitol Information Group, Inc. and/or Business Management Daily ("BMD"), Google, Inc. ("Google"), Texas Office of the Attorney General and/or State of Texas ("Texas AG"), and The PNC Financial Services Group, Inc. ("PNC").  He alleges three claims against all seven defendants for which he seeks unspecified damages and injunctive relief: defamation and defamation per se (Count I), defamation, defamation per se, and punitive damages (Count II), and censorship and interference with economic opportunity (Count III).

In both actions, the factual allegations are similar.  They begin with Gaston's introduction to and later relationship with Rivas who was his former coworker at Stanford Financial Group and the mother of his child.  Complaint, ¶ 12.  Gaston alleges that Rivas went through his personal belongings while staying at his house and uncovered a letter and records from the New Jersey State Police.  *Id.*  These records revealed false and defamatory statements which Rivas

2 - FINDINGS AND RECOMMENDATIONS

later used to threaten and harass Gaston.  *Id*.  These statements included that Gaston:
(1) committed and was convicted of insurance fraud in Florida and New York; (2) committed
and was convicted of social security fraud; (3) committed and was convicted of domestic spousal
abuse; and (4) was an illegal alien and a trouble maker.  *Id.*

    After resigning from Stanford Financial Group, Gaston worked at the Harris County
District Attorney's Office in Texas from October 2007 until January 2011.  *Id*, ¶ 13.  He then
describes in some detail his forced resignation from that position, as well as defendants'
coordinated efforts to defame him through internet articles and to stalk and harass him.

    Specifically, he alleges that at an office party he was subjected to sexual harassment and
misconduct by district attorneys and investigators.  *Id*, ¶ 16.  On several occasions, these
attorneys and investigators "scorned, ridiculed, and show[ed] him complete contempt."  *Id*, ¶ 17.
They burglarized his car and apartment during an unlawful search and seizure for a sex toy, and
"threatened to make life impossible for [him] because of [his] refusal to return the [sex toy] and
because [he] had dissented or refused to participate in other acts of prosecutorial bias or
favoritism for their friends or against innocent people."  *Id,* ¶ 18.  They also hacked into his
computer to steal personal information and his audit work while with Stanford Financial Group
to help them in a lawsuit against that company.  *Id.*  They used files and information "to sabotage
[his] personal or professional life" and "placed a GPS device in [his] brakes [*sic*] system causing
[his car] to explode."  *Id.*

    On January 7, 2011, Gaston was informed that he could not continue to work at the
District Attorney's office and was threatened with termination if he did not return the sex toy.
*Id*, ¶ 20.  He also was told that they had "had people working for them inside the [Texas AG's
office] and the major banks around country who were ready to make sure that [he] never gets

custody of his children, and that [his] passport and driver's license would be revoked or suspended for being a deadbeat dad or for not paying child support; and that they would use their internal database to send false financial or credit information to the major Credit Bureaus to ruin [his] credit." *Id*, ¶ 21.

The next day, Gaston learned that if he failed to return the sex toy, Rivas would release a newspaper article, "along with all of [Gaston's] private information on Google or the internet in order to paint or show all of [Gaston's] friends, family members, colleagues and future employers that [he] was crazy and a trouble maker." *Id*, ¶ 22. Rivas also would reveal that he had been convicted of various crimes (insurance driver's license fraud in Florida and New York, social security fraud, domestic spousal abuse), "was an illegal alien," "never gets along with anyone," "committed fraud with the IRS," and "was involved in a Ponzi scheme and committed fraud while he was working for Stanford Financial Group." *Id.* Gaston refused to return the sex toy and was forced to resign from his position as a result. *Id.*

Gaston later received an email from Rivas accusing him of being a criminal and attaching a newspaper article posted on Google, indexed to Lexis-Nexis, and published by BMD entitled "Insist on thorough documentation of background check results." *Id*, ¶ 23.[1] He alleges that this article "clearly makes an example of [Gaston] as a convicted criminal and served as a form of advertisement to generate memberships and revenues for [BMD]" and is based on false information. *Id.* He targets Rivas as the source of the false information which was obtained from the stolen letter. *Id.*

As a result of these acts, Gaston fled Houston, filed for bankruptcy, quit law school, was forced to live out of his car and sleep on the streets. *Id, ¶* 24. He alleges that defendants are

---

[1] This article is available at: http://www.businessmanagementdaily.com/4643/insist-on-thorough-documentation-of-background-check-results (last visited Feb. 2, 2012)

continually following and monitoring him and that, as a result of the defamatory statements posted online, intend to deny him "relationships and anything he applies for." *Id*. Although Gaston lists a post office box in Portland, Oregon, as his address, he alleges that he currently resides in Phoenix, Arizona. *Id, ¶ 3*.

Gaston's claims against the various defendants are based on the following alleged wrongful conduct:

1. Rivas "engaged in an abusive and unlawful pattern of stalking and harassing [Gaston] at his home and his place of employment (job), for calling and emailing [his] friends, girlfriends, family members, colleagues and bosses and others to lie and make false or defamatory statements against [him] as retaliation or grudge or revenge." *Id*, ¶ 5.

2. Facebook "has allowed and/or gave [Rivas] access to its server or internet web communication system or device or social network to spread false or defamatory statements against [him]." *Id*, ¶ 4.

3. Lexis-Nexis provides "computer assisted legal research to the public at large and holds the largest electronic database for legal and public records in the world" and has "conspired with other Defendants to retaliate against [Gaston] and has published or republished false and defamatory statements against him." *Id*, ¶ 6.

4. BMD "engages in giving business professionals the news, skills, and strategies they need to grow their businesses, and help these businesses avoid legal pitfalls and advance careers with more than a dozen HR-related newsletters, webinars, special reports, e-letters, podcasts and books." *Id*, ¶ 7. One of their publications is The HR-Specialist. *Id*. BMD "conspired with the other Defendants to retaliate against [Gaston] and has published or republished false and defamatory statements against him." *Id*.

5 - FINDINGS AND RECOMMENDATIONS

5.  Google "reaches more than one billion online users (people) worldwide" and has "conspired with other Defendants to retaliate against [Gaston], and has published or republished false and defamatory statements against him."  *Id, ¶* 8.

6.  Texas AG "falsely published and/or reported that [Gaston] was 120 days delinquent in child support payments" and "conspired to retaliate, entrap, and torture [Gaston], and [has] committed several unlawful acts against him, including publishing and republishing false and defamatory statements against him."  *Id, ¶* 9.

7.  PNC "falsely published and/or reported that [Gaston] was 120 days delinquent in student loan payments, causing [him] to file for bankruptcy" and also "conspired with other defendants to retaliate against [him] and has published or republished false and defamatory statements against him."  *Id, ¶* 10.

## **STANDARDS**

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  FRCP 12(h)(3); *see also Cal. Diversified Promotions, Inc. v. Musick*, 505 F2d 278, 280 (9th Cir 1974) ("It has long been held that a judge can dismiss *sua sponte* for lack of jurisdiction.").

Moreover, a complaint filed *in forma pauperis* may be dismissed at any time, including before service of process, if the court determines that:

> (A) the allegation of poverty is untrue; or
> (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 USC § 1915(e)(2); see also *Neitzke v. Williams*, 490 US 319, 324 (1989); *Jackson v. State of Ariz.*, 885 F2d 639, 640 (9th Cir 1989).

A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke*, 490 US at 325; *Lopez v. Dep't of Health Servs.*, 939 F2d 881, 882 (9th Cir 1991); *Jackson*, 885 F2d at 640.

A court must liberally construe the allegations of a *pro se* plaintiff and afford the plaintiff the benefit of any doubt. *Lopez*, 939 F2d at 883. However, under FRCP 8(a)(2), all complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 US 41, 47 (1957). This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S Ct 1937, 1949 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

In order to survive a motion to dismiss under FRCP 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*, quoting *Twombly*, 550 US at 570. When reviewing this complaint, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F3d 1068, 1072 (9th Cir 2005), citing *Cervantes v. United States*, 330 F3d 1186, 1187 (9th Cir 2003).

## FINDINGS

Several defects in Gaston's Complaint require *sua sponte* dismissal.

## I. Subject-Matter Jurisdiction

First, federal courts are courts of limited jurisdiction, and a case is presumed to fall outside a federal court's jurisdiction unless proven otherwise. *Kokkonen v. Guardian Life Ins.*

*Co. of Am.*, 511 US 375, 377 (1994).  A district court is empowered to hear only those cases

which are within the judicial power conferred by the United States Constitution and those which

fall within the area of jurisdiction granted by Congress.  *Richardson v. United States*, 943 F2d

1107, 1112-13 (9th Cir 1991), *cert denied*, 503 US 936 (1992).

      Gaston alleges that this court has diversity jurisdiction.  Federal diversity jurisdiction

requires that all parties to an action be "citizens of different states" and that it allege an amount

in controversy of at least $75,000.00.  28 USC § 1332(a).  Although Gaston alleges the addresses

of the defendants, he does not allege their citizenship.  Based on their addresses, diversity of

citizenship may well exist, but must be pled.  He also fails to allege that his damages meet the

minimum threshold of $75,000.00.

      Since Gaston does not allege any claim for violation of any federal law or provision of

the United States Constitution, this court has no federal question jurisdiction under 28 USC

§ 1331.

## II.  Personal Jurisdiction

      Second, even if diversity jurisdiction exists, it is highly unlikely that personal jurisdiction

exists over some of the defendants.  *See Urziceanu* v. *Nevada,* No. CV 11-0047-H-DWM-RKS,

2011 WL 5870556, at *1 (D Mont Nov. 22, 2011) (denying motion for IFP and dismissing

complaint under § 1915(e) because personal jurisdiction was lacking).  Gaston's first action

suffers from this same defect as pointed out by Magistrate Judge Papak.

      A plaintiff must establish that personal jurisdiction is proper under both Oregon's long

arm statute and constitutional due process requirements.  *Lake v. Lake,* 817 F2d 1416, 1420 (9th

Cir 1987).  Aside from the major corporations of Facebook, Lexis Nexis, BMD, and Google,

there is no indication that the other three defendants (Rivas, Texas AG, and PNC) directed their

activities to Oregon.  Thus, under the constitutional test, Gaston is unlikely to be able to show

that these other three defendants either had "continuous and systematic" or "substantial" contacts

with Oregon to establish general jurisdiction or to satisfy the three-part test for specific

jurisdiction.  *See Lake,* 817 F2d at 1420 (General jurisdiction exists when a defendant has

"continuous and systematic" or "substantial" contacts with the forum state); *Roth v. Garcia*

*Marquez,* 942 F2d 617, 620-21 (9th Cir 1991) (the three-part test for specific jurisdiction requires

that: "(1) the nonresident defendant must have purposefully availed himself of the privilege of

conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's claim must

arise out of or result from the defendant's forum-related activities; and (3) exercise of

jurisdiction must be reasonable.")

## III.  Venue

Third, as in the first action, the Complaint fails to show that venue is proper in Oregon.

Gaston alleges that this Court "enjoys venue under 28 U.S.C. § 1331 because this case involves a

federal question and/or federal laws or treaties under the fourth (4th) and the fourteenth (14th)

amendments of the United States Constitution."  Complaint, ¶ 2.  Gaston is clearly confused

about the statute which governs venue since the statute he cites (28 USC § 1331) relates only to

jurisdiction.  Venue is governed by 28 USC § 1391.

If jurisdiction is based on diversity of citizenship under 28 USC § 1332, as alleged here,

then subsection (a) provides that the case may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same
> State, (2) a judicial district in which a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of property that is the subject of the action
> is situated, or (3) a judicial district in which any defendant is subject to jurisdiction at the
> time the action is commenced, if there is no district in which the action may otherwise be
> brought.

28 USC § 1391(a).

9 - FINDINGS AND RECOMMENDATIONS

If jurisdiction is based on a federal question under 28 USC § 1331, then subsection (b) provides that the case may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 USC § 1391(b).

Here, Gaston does not allege that any defendant resides in Oregon or may be "found" in Oregon, eliminating the first basis for venue for both diversity and federal question jurisdiction, as well as the third basis for federal question jurisdiction.

Gaston's Complaint also fails the second basis for both diversity and federal question jurisdiction because the events allegedly occurring within Oregon were not a substantial part of events giving rise to Gaston's claims. Under § 1391, "the substantiality of the operative events is determined by assessment of their ramifications for efficient conduct of the suit." *Myers* v. *Bennett Law Offices,* 238 F3d 1068, 1076 (9th Cir 2001). In determining the issue of substantiality, the Court must look to "the entire sequence of events underlying the claim[s], and focus on the defendants' (rather than the plaintiff's) actions." *Lee* v. *Corr. Corp. of Am.,* 525 F Supp2d 1238, 1241 (D Haw 2007). "[F]or venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co.* v. *Glasbrenner,* 417 F3d 353, 357 (2nd Cir 2005). The plaintiff bears the burden of showing that venue in this district is proper. *Piedmont Label Co.* v. *Sun Garden Packing Co.,* 598 F2d 491, 496 (9th Cir 1979). No part of the alleged events detailed in the Complaint occurred in Oregon, eliminating this basis for venue. Instead, it appears that venue would be more appropriate in Texas.

The only remaining basis for venue in Oregon is diversity jurisdiction based on a defendant being subject to jurisdiction in Oregon.  As discussed above, it is far from clear that any defendant is actually subject to personal jurisdiction in Oregon.  Thus, the Complaint does not properly allege venue in Oregon.

## IV. <u>Failure to State a Claim</u>

Even if Gaston amends his Complaint to allege subject matter jurisdiction, personal jurisdiction, and venue in Oregon, he faces additional obstacles.

### A. <u>Communications Decency Act</u>

Gaston seeks to hold Google, Facebook, and Lexis Nexis liable for defaming him and/or conspiring to defame him based solely on content created or supplied by Rivas.  However, "[i]nternet publishers are treated differently from corresponding publishers in print, television and radio."  *Carafano v. Metro splash.com, Inc.*, 339 F3d 1119, 1122 (9th Cir 2003).  A federal law, § 230(c)(1) of the Communications Decency Act ("CDA"), 47 USC § 230(c)(1), expressly precludes defamation claims against providers of an "interactive computer service" based on content provided by others.  *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F3d 1157, 1162 (9th Cir 2008) (*en banc*) ("Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties . . ."); *Carafano v. Metrosplash.com, Inc.*, 339 F3d 1119, 1122 (9th Cir 2003) ("Through [section 230 of the CDA], Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party.").

The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a

computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 USC § 230(f)(2). Google, Facebook and Lexis Nexis clearly fall within that definition. Therefore, Gaston fails to state any viable claim for defamation against those three defendants who should be dismissed with prejudice.

### B. Eleventh Amendment Immunity

Gaston's claims against the Texas AG and State of Texas also fail. The Eleventh Amendment of the United States Constitution prohibits suits against a state and its agencies and departments for legal or equitable relief in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 US 89, 100 (1984); *Yakama Indian Nation v. State of Wash. Dept. of Rev.*, 176 F3d 1241, 1245 (9th Cir 1999). There are two exceptions to the Eleventh Amendment jurisdictional bar: (1) Congress can abrogate the Eleventh Amendment without the consent of the states in certain situations; and (2) a state may waive its immunity by consenting to suit in federal court but must do so by "the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Micomonaco v. State of Wash.*, 45 F3d 316, 319 (9th Cir 1995). A statute consenting to suit in state court does not constitute consent to suit in federal court. *Fordyce v. City of Seattle*, 55 F3d 436, 441 (9th Cir 1995).

The Office of the Attorney General for Texas is an arm of the state entitled to sovereign immunity. *See* Tex. Const. art. IV, § 22.; *Walker v. Texas, Office of the Attorney General*, 217 F Supp2d 776, 779 (ED Tex 2002). The Texas Tort Claims Act does not waive Eleventh Amendment immunity in federal court for intentional tort claims, such as defamation and libel. *Sherwinski v. Peterson*, 98 F3d 849, 851-52 (5th Cir 1996) (relying on language in the Tort

Claims Act which requires claims to be brought in state court); Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2).  Thus, Gaston cannot sue the State of Texas or the Texas AG in federal court.

**C.  PNC**

Although Gaston names PNC as a defendant, he alleges only in a conclusory fashion that it "falsely published and/or reported that [he] was 120 days delinquent in student loan payments, causing [him] to file bankruptcy."  Complaint, ¶ 10.  This is clearly insufficient to state a claim. Gaston must allege when and where this publication was made, that it was false, and how it resulted in his bankruptcy.  Although he also alleges in the same paragraph that PNC "published or republished false & defamatory statements," the Complaint is devoid of any factual support for that charge.  Because the allegations against PNC are nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Gaston fails to state a claim against PNC.  *Iqbal*, 129 S Ct at 1949.

**D.  BMD**

The defamation claim against BMD is based its publication of one article.  That article merely warns readers to be careful when running background checks, citing a decision in another lawsuit filed by Gaston for employment discrimination.  *Gaston v. State of New Jersey,* No. 05-cv-03006 (FLW) 2008 WL 540853 (D NJ Feb. 25, 2008).  Truth is always a defense to defamation.  To the extent that BMD accurately summarized the decision in Gaston's prior lawsuit, it cannot be liable for defamation.

**RECOMMENDATIONS**

Plaintiff's Application to Proceed *In Forma Pauperis* (docket #1) should be GRANTED. However, for the reasons set forth above, the Complaint should be DISMISSED with prejudice as to defendants Facebook, Inc., Lexis-Nexis Group and/or Reed Elsevier, Inc., Google, Inc., and

13 - FINDINGS AND RECOMMENDATIONS

the Texas Office of the Attorney General and/or State of Texas and without prejudice as to the remaining defendants.  Plaintiff should be given 30 days to file an amended complaint curing the defects described above or refile this action in a district in which venue is proper.  If plaintiff fails to file such an amended complaint, the case should be dismissed with prejudice.

Because the Complaint should be dismissed, plaintiff's Motion for Appointment of *Pro Bono* Counsel (docket #3) should be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due Tuesday, February 21, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

This Findings and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED February 2, 2012.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

14 - FINDINGS AND RECOMMENDATIONS